**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HAISHA CORP., <br><br> Plaintiff, <br><br> vs. <br><br> SPRINT SOLUTIONS, INC.; and DOES 1-100, inclusive, <br><br> Defendant. | CASE NO. 14cv2773-GPC(MDD) <br><br> **ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND DISMISSING THE COMPLAINT** <br><br> (Dkt. No. 6.) <br><br> **REDACTED-ORIGINAL FILED UNDER SEAL** |

Before the Court is Defendant's motion to compel arbitration and to dismiss the complaint for lack of subject matter jurisdiction, or in the alternative, stay pending arbitration, or in the alternative, dismiss for failure to state a claim. (Dkt. No. 6.) Plaintiff filed an opposition. (Dkt. No. 8.) Defendant filed a reply. (Dkt. No. 9.) After a review of the pleadings, briefs, supporting documents and the applicable law, the Court GRANTS Defendant's motion to compel arbitration and dismisses the complaint.

## Background

On October 21, 2014, Plaintiff Haisha Corporation ("Haisha" or "Plaintiff") filed a complaint against Defendant Sprint Solutions, Inc. ("Sprint" or "Defendant") in San Diego County Superior Court alleging four causes of action for intentional interference with prospective economic relations; negligent interference with business relationships;

unlawful, unfair and fraudulent business acts and practices; and interference with contractual relations. (Dkt. No. 1-1 at 2.) On November 20, 2014, Defendant removed the case to this Court. (Dkt. No. 1.)

According to the complaint, Plaintiff was a Sprint Preferred Dealer Partner doing business as The Wireless Place since August 2007. (Dkt. No. 1-1, Compl. ¶ 8.) Plaintiff ultimately owned six retail wireless phone stores in San Diego. (Id.) Plaintiff was an exclusive dealer for Sprint and operated all locations as Sprint branded stores. (Id.) In 2009, Haisha was selected to be a Preferred Dealer. (Id. ¶ 9.)

Haisha stores were consistently ranked amongst the very top independent Sprint dealers in customer service, sales, and other key performance metrics, and received high praises from the Vice President ("VP") and Directors when they would visit. (Id. ¶¶ 10, 11.) Sprint management often referred to Plaintiff as a valued partner in business and encouraged expansion. (Id. ¶ 12.)

On August 26, 2013, Sprint's VP of the West Region, Rob Bryant, sent an email to Andrew Haisha, Haisha's president, stating Haisha's contract with Sprint had expired and that Sprint would not be renewing it. (Id. ¶ 13.) The letter stated that Plaintiff had thirty (30) days to either close all six stores or find a buyer to purchase them. (Id.) This was a complete surprise to Haisha as the relationship was on track for continued growth and expansion. (Id. ¶ 14.)

Mark Pena, a director at Sprint, explained that the termination was complicated and had to do with SoftBank's purchase of Sprint. (Id. ¶ 15.) SoftBank wanted larger dealers and Haisha's six stores was no longer a partnership that Sprint considered profitable. (Id.) In that telephone conversation, Pena stated that he did not want Haisha to close its doors because he did not want to lose distribution in the San Diego market. (Id. ¶ 17.) Moreover, Pena did not want Haisha stores to convert to a competitor so he provided a list of five dealers in Sprint's West Region and stated that the sale of the stores would not be approved to anyone other than those five existing Sprint preferred dealers. (Id.)

Haisha obtained offers from Sprint preferred dealers that were not on the list of "five" provided by Pena. (Id. ¶ 18.) When Haisha contacted the five dealers, four expressed significant interest but had concerns about receiving Pena's approval of the sale. (Id. ¶ 19.) Ultimately, the only dealer that Pena permitted to negotiate with Haisha paid only $600,000, significantly less than fair market value for its stores. (Id. ¶ 20.) Plaintiff had contractual relationships and obligations to landlords relating to the operation of the Sprint stores owned by Haisha. (Id. ¶ 21.) The dealer that purchased the stores intended to close certain locations, leaving Plaintiff liable for the leasehold obligations. (Id.)

In its motion to compel arbitration, Defendant provides additional relevant facts. On January 24, 2011, Haisha entered into an Authorized Representative Agreement ("AR Agreement") ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. (Dkt. No. 11, Serra Decl., Ex. A, AR Agreement (UNDER SEAL).) The AR Agreement ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. (Id. ¶ 14.1 (UNDER SEAL).) ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. (Id. ¶ 14.2 (UNDER SEAL).) On August 26, 2013, after the two year term had expired, Sprint sent Haisha a 30 days' written notice that the contract had expired and that it would not renew the agreement. (Dkt. No. 1-1, Compl. ¶ 13.)

The AR Agreement provides a dispute resolution procedure outlined in Exhibit E of the agreement. On November 19, 2014, Sprint sent Haisha a written demand that the parties attend mediation as required in the agreement prior to invoking arbitration. (Dkt. No. 6-2, Coombe Decl. ¶ 2; Ex. A.) As of the filing of its motion, Haisha has not

responded to the mediation demand. While still premature since arbitration may be initiated after the 45th calendar day following the request for mediation, Sprint moves to compel arbitration under the Federal Arbitration Act ("FAA").

**A.     Motion to Compel Arbitration**

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq*., espouses a general policy favoring arbitration agreements and establishes that a written arbitration agreement is "valid, irrevocable, and enforceable." 9 U.S.C. § 2. The FAA permits "a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that . . . arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. The United States Supreme Court has stated that there is a federal policy favoring arbitration agreements. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). Federal policy is "simply to ensure the enforceability, according to their terms, of private agreements to arbitrate." Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ., 489 U.S. 468, 476 (1989). Courts are also directed to resolve any "ambiguities as to the scope of the arbitration clause itself . . . in favor of arbitration." Id.

Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. In analyzing whether an arbitration agreement is valid and enforceable, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2." Doctor's Assoc., Inc. v. Casarotto, 517 U.S. 681, 687 (1996). In interpreting the validity and scope of an arbitration agreement, the courts apply state law principles of contract formation and interpretation. See Wolsey, Ltd. v. Foodmaker, Inc., 144 F.3d 1205, 1210 (9th Cir. 1998) (citing First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995)).

When considering a party's request to compel arbitration, the court is limited to

determining (1) whether a valid arbitration agreement exists, and if so (2) whether the arbitration agreement encompasses the dispute at issue. Cox v. Ocean View Hotel Corp., 533 F.3d 1114, 1119 (9th Cir. 2008). If these conditions are satisfied, the court is without discretion to deny the motion and must compel arbitration. 9 U.S.C. § 4; Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985) ("By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration.").

Plaintiff argues that its claims do not fall under the scope of the arbitration provision. Second, Plaintiff argues that the arbitration agreement is unenforceable because it is procedurally and substantively unconscionable.

**B.     Scope of Arbitration Provision**

Plaintiff first argues that its claims do not fall within the scope of the arbitration provision because its harm is based on Defendant preventing third parties from bidding on and making offers for Sprint stores owned and successfully managed by Plaintiff and offering fair market value, and not a breach of the AR Agreement. Plaintiff argues that while the arbitration provision starts off "broad", the limiting words "in construction of the agreement" limits the arbitration agreement to certain instances, which excludes its claims. Defendant argues that the arbitration provision is broad and covers the issues arising from the termination of the AR Agreement.

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." AT & T Tech., Inc. v. Commc'n Workers of Am., 475 U.S. 643, 648 (1986); Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000) ("it is a way to resolve those disputes-but only those disputes-that the parties have agreed to submit to arbitration.") However, any doubts as to arbitrability must be resolved in favor of coverage and "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." AT&T Tech., Inc., 475 U.S. at 650.

1   The AR Agreement ███████████████████████████████
2   ██████████
3          ███████████████████████████████████████
4   ███████████████████████████████████████████████
5   ███████████████████████████████████████████████
6   ██████████████████████████████
7   (Dkt. No. 5-1, Serra Decl., Ex. E at 43 (UNDER SEAL).)

    Plaintiff's argument that "in construction of the agreement" limits the arbitration agreement is without merit because the phrase "in construction of the agreement " is not contained in the dispute resolution paragraph.

███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████. While it is true that Plaintiff's causes of action do not allege breach of contract based on the AR Agreement, it is based on harm that allegedly occurred when the AR Agreement was terminated. After the AR Agreement was terminated, Defendant allegedly prevented third parties from bidding on and making offers for Sprint stores owned and successfully managed by Plaintiffs. (Dkt. No. 8 at 5.) The allegations of interference with business and contractual relations, and unfair business practices arise from the termination of the AR Agreement. Accordingly, the scope of the arbitration provision covers the causes of action alleged by Plaintiff.

**C.   Validity of Arbitration Provision**

    Plaintiff argues that the arbitration provision is both procedurally and substantively unconscionable. Defendant disagrees.

    In California, a contract must be both procedurally and substantively unconscionable to be rendered invalid. <u>Chavarria v. Ralphs Grocery Co.</u>, 733 F.3d 916, 922 (9th Cir. 2013). The procedural component focuses on oppression, and surprise due to unequal bargaining power. <u>Armendariz v. Fdn. Health Psychcare Servs., Inc.</u>, 24 Cal. 4th 83, 114 (2000). The substantive element focuses on "overly

harsh" or "one-sided" results. Id.  This element "has to do with the effects of the contractual terms and whether they are unreasonable." Marin Storage & Trucking, Inc. v. Benco Contracting and Eng'g, Inc., 89 Cal. App. 4th 1042, 1053 (2001).  Courts apply a sliding scale where procedural and substantive unconscionability need not be present in the same degree such that a showing of greater substantive unconscionability will require less evidence of procedural unconscionability. Armendariz, 24 Cal. 4th at 114.  However, both procedural and substantive unconscionability must be present "in order for the court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability." Stirlen v. Supercuts, 51 Cal. App. 4th 1519, 1533 (1997).  The party opposing arbitration bears the burden to demonstrate unconscionability. Sonic–Calabasas A, Inc. v. Moreno, 57 Cal. 4th 1109, 1148 (2013); Pinnacle Museum Tower Ass'n v. Pinnacle Market Dev. (US), LLC, 55 Cal. 4th 223, 247 (2012).

### 1. Procedural Unconscionability

Procedural unconscionability "addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power." Pinnacle Museum Tower Ass'n, 55 Cal. 4th at 246 (citing Armendariz, 24 Cal. 4th at 114).  "Oppression arises from an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice," while "[s]urprise involves the extent to which the terms of the bargain are hidden in a 'prolix printed form' drafted by a party in a superior bargaining position." Serpa v. California Surety Investigations, Inc., 215 Cal. App. 4th 695, 703 (2013) (citations and quotations omitted); see also Mercuro v. Superior Court, 96 Cal. App. 4th 167, 174 (2002) ("procedural unconscionability focuses on the oppressiveness of the stronger party's conduct").

In analyzing procedural unconscionability, the court first focuses on whether the contract was one of adhesion. Armendariz, 24 Cal. 4th at 114.  A contract of adhesion is "a standardized contract, which, imposed and drafted by the party of superior

bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." Id. at 113 (employment contract where arbitration agreement was condition of employment and there was no opportunity to negotiate). Under California law, a contract of adhesion has an element of procedural unconscionability because it is "presented on a take-it-or-leave-it basis and [is] oppressive due to 'an inequality of bargaining power that result[ed] in no real negotiation and an absence of meaningful choice.'" Nagrampa v. MailCoups Inc., 469 F.3d 1257, 1281 (9th Cir. 2006).

Plaintiff argues that AR Agreement was written by Defendant and it had no bargaining power. Andrew Haisha states that during the contract negotiation stage, he never met Defendant face-to-fact to negotiate any terms but it was merely emailed to Defendant to e-sign. (Dkt. No. 8-1, Haisha Decl. at 2.) He also states that "[i]f there was anything I didn't like in the contract, Defendant wasn't going to negotiate with me and I felt I had one of two choices –either I take the deal as is or leave it." (Id.) In reply, Defendant argues that Haisha is a sophisticated corporation that alleged it operated six highly successful retail wireless phone stores; that it was selected by Sprint to be a Preferred Dealer in 2009; that Preferred Dealers are held to the same standard of quality, image and customer service as Sprint corporate stores; that its stores were consistently ranked amongst the very top independent Sprint dealers in customer service, sales and other key performance metrics; and that at the time of termination, it had net profits of over $400,000 per year. (Dkt. No. 9 at 5.) As such, it contends that there was no oppression or surprise in the contracting process and the arbitration provision should be enforced.

Without specific factual support, Plaintiff conclusorily alleges that Defendant was not going to negotiate any terms of the contract and he "felt" like he had to either take it or leave it. There is no indication whether Andrew Haisha attempted to negotiate any portion of the contract and/or whether he objected to the terms of the arbitration provision, and no evidence that Plaintiff could not have negotiated with

1  Defendant regarding this term if he had asked.  See e.g. Ulbrich v. Overstock.Com,
2  Inc., 887 F. Supp. 2d 924, 932 (N.D. Cal. 2012) (no procedural unconscionability
3  where while the plaintiff did not negotiate the terms of the arbitration provision and
4  was not aware of such agreement before his first day of work, there was no evidence
5  that the plaintiff could not have negotiated regarding this term if he had so requested
6  as he did with other terms in the employment agreement and while plaintiff felt
7  "compelled" to sign the agreement, the plaintiff offered no facts to support that bald
8  assertion.)

9  　　　　Moreover, the cases cited by Plaintiff concern employees or individual
10 subscribers or consumers where courts have held there is unequal bargaining power.
11 In this case, Plaintiff and Defendant are two sophisticated corporate entities.  While
12 Sprint has stronger bargaining power due to its national presence, Haisha Corporation
13 did not have weak bargaining power.  Haisha was successful and alleged it was a top
14 performing independent dealer and every year, it added an additional retail store.

15 　　　　In addition, the Court notes, and Plaintiff do not allege that there was no
16 surprise.  The dispute resolution provision is not embedded in the contract and hidden
17 in a "prolix printed form", see Serpa, 215 Cal. App. 4th at 703, but the dispute
18 resolution process is attached as a separate exhibit which is attached to the AR
19 agreement.  See Molina v. Scandinavian Designs, Inc., No. 13cv4256 NC, 2014 WL
20 1615177, at *7 (N.D. Cal. Apr. 21, 2014) (amount of procedural unconscionabilty is
21 limited by the fact that the arbitration agreement was not buried in a lengthy contract
22 but was rather presented as a separate two page document); Roman v. Superior Court,
23 172 Cal. App. 4th 1462, 1470–71 (2009) (despite adhesive contract, finding that
24 procedural unconscionability of arbitration provision was limited because "it was [not]
25 buried in a lengthy employment agreement[,]" but was instead "contained on the last
26 page of a seven-page employment application . . . [and] was set forth in a separate,
27 succinct (four-sentence) paragraph that [plaintiff] initialed, affirming she had seen it.
28 . . . "); but see Higgins v. Superior Court, 140 Cal. App. 4th 1238, 1252–1253 (2006)

1  (procedural unconscionability was high when arbitration provision was buried in
2  24–page, single-spaced document and, "[a]lthough petitioners were required to place
3  their initials in boxes adjacent to six other paragraphs, no box [for initials] appeared
4  next to the arbitration provision".)  In conclusion, the Court finds that there is a small
5  amount of procedural unconscionability due to the slight unequal bargaining power
6  between Sprint and Haisha.

7  Plaintiff also argues that the arbitration provision is procedurally unconscionable
8  because Defendants failed to attach a copy of the arbitration rules to the contract.
9  Defendant does not address this argument.

10  The courts of appeals have reached different conclusions as to whether an
11  arbitration provision is procedurally unconscionable when a copy of the arbitration
12  rules is not attached to the contract.  <u>Tiri v. Lucky Chances, Inc.</u>, 226 Cal. App. 4th
13  231, 246 n. 9 (2014).  Some courts have held that the failure to provide arbitration rules
14  can be deemed procedurally unconscionable, <u>Sparks v. Vista Del Mar Child and Family
15  Servs.</u>, 207 Cal. App. 4th 1511, 1523 (2012), <u>Trivedi v. Curexco Technology Corp.</u>,
16  189 Cal. App. 4th 387, 393 n.4 (2010), and <u>Harper v. Ultimo</u>, 113 Cal. App. 4th 1402,
17  1406–07 (2003); while other cases have held that procedural unconscionability can be
18  avoided if the arbitration rules are incorporated into the contract by reference, such
19  incorporation is clear, and the rules are readily available or easily accessible on the
20  Internet and the plaintiff did not lack the means or capacity to retrieve them.  <u>Lane v.
21  Francis Capital Mgmt.</u>, 224 Cal. App. 4th 676, 690 (2014) (failure to attach AAA rules
22  to arbitration agreement did not render the agreement procedurally unconscionable,
23  because rules were easily accessible on the Internet and plaintiff did not lack means or
24  capacity to retrieve them).

25  In <u>Lane</u>, the court held that "[a] failure to attach the arbitration rules could be a
26  factor supporting a finding of procedural unconscionability where the failure would
27  result in surprise to the party opposing arbitration."  <u>Lane</u>, 224 Cal. App. 4th at 690;
28  <u>see also</u> <u>Peng v. First Republic Bank</u>, 219 Cal. App. 4th 1462, 1466 (2013) (failure to

attach AAA rules, standing alone, insufficient grounds to find procedural unconscionability in employment case where employee had 25 days to consider employment offer that included arbitration agreement); Medlin Ins. Agency v. QBE Ins. Corp., No. 12cv2773 AWI DLB, 2012 WL 2499952, at *5 (E.D. Cal. June 27, 2012) (failure to provide arbitration rules is not, itself, enough to establish procedural unconscionability). The court held that a failure to attach the arbitration rules, by itself, is not sufficient to support a finding of procedural unconscionability. Id. In Lane, the court concluded, in a former employee/employer action, that the arbitration rules referenced in the agreement were easily accessible to the parties on the Internet. Id. at 691. Moreover, the plaintiff was a formerly well-paid professional analyst and did not appear to lack the means or capacity to locate and retrieve a copy of the referenced rules. Id. at 691-92. In the absence of oppression or surprise, the court concluded that the failure to attach a copy of the AAA rules did not make the agreement procedurally unconscionable. Id. at 692.

Some district courts have declined to follow California cases that hold that a failure to attach arbitration rules renders an arbitration provision unenforceable, and instead have have held that failure to provide arbitration rules to the agreement does not render the agreement procedurally unconscionable. See Fardig v. Hobboy Lobby Stores, Inc., No. SACV 14-561 JVS(ANx), 2014 WL 2810025, at * 5 (C.D. Cal. June 13, 2014); Ulbrich v. Overstock.Com, Inc., 887 F. Supp. 2d 924, 932 (N.D. Cal. 2012) (employer's failure to provide employee copy of AAA rules did not render agreement procedurally unconscionable because incorporation of rules was clear and rules were readily available.); Howard v. Octagon, Inc., No. 13–cv–01111 PJH, 2013 WL 5122191, at *16 (N.D. Cal. Sept. 13, 2013) (supporting cases that find the arbitration agreement's clear incorporation of the AAA Rules and the availability of the AAA Rules to weigh against finding procedural unconscionability). In Fardig, the district court noted that despite California cases holding that failure to attach arbitration rules renders an arbitration clause unconscionable, the court held that failure to attach the

arbitration rules to the agreements did not render them procedurally unconscionable. Fardig, 2014 WL 2810025 at *5. The district court cited to the United States Supreme Court decision in AT&T Mobility LLC v. Conception, 131 S. Ct 1740, 1761 (2011) where the Court stated that "we have repeatedly referred to the [FAA's] basic objective as assuring that courts treat arbitration agreements 'like all other contracts.'" Id. The district court explained that a general rule that arbitration rules must be attached to an employment agreement in order to avoid a finding of procedural unconscionability would place arbitration contracts on a different footing than other contracts when it comes to the doctrine of incorporation by reference. Id. The court concluded that treating arbitration contracts differently is explicitly prohibited by the Supreme Court's decision. Id.

Furthermore, in Ulbrich, the district court referred to general California rules of contract interpretation which allows incorporation by reference as long as it is clear and the incorporated rules are readily available. Ulbrich, 887 F. Supp. 2d at 932-33 (citing Williams Const. Co. v. Standard-Pacific Corp., 254 Cal. App. 2d 442, 454 (1967) ("A contract may validly include the provision of a document not physically a part of the basic contract.")). Therefore, the Court agrees with the reasoning in these cases that based on federal caselaw and state law rules of contract interpretation, incorporation by reference of the arbitration rules is sufficient to excuse attachment of the arbitration rules as long as the rules are easily accessible and the plaintiff has the means and capacity to retrieve them.[1]

---

[1] In Pokorny v. Quixtar, Inc., 601 F.3d 987, 996–97 (9th Cir. 2010), the Ninth Circuit held that the alternative dispute resolution agreement was procedurally unconscionable because the agreement was offered on a take-it-or-leave it basis and the arbitration rules, which were incorporated by reference, were not attached to the agreement. The Court finds this case distinguishable to Pokorny since the Rules of Conduct were not readily available. In Pokorny, there was a high degree of both procedural and substantive unconscionability. Id. at 996. As to procedural unconscionability, it was undisputed that the Defendants occupied a superior bargaining position; that the plaintiffs did not individually participate in the negotiation of the terms of the ADR agreements and that the agreements were presented on a take-it-or-leave-it basis. Id. at 996. In addition to those facts, defendant failed to attach a copy of the Rules of Conduct to the Agreement to Arbitrate. Id. at 997. To make it

██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
████████████████████████████████████ (Dkt. No. 11-1, AR Agreement, Ex. E ¶ 3 (UNDER SEAL).) Moreover, these rules are easily accessible on the Internet and Plaintiff had the capacity and means to retrieve the rules. Therefore the Court concludes that failure to attach the Rules did not make the provision procedurally unconscionable.

Due to the slight unequal bargaining power between Plaintiff and Defendant, the Court concludes there is some procedural unconscionability. Because of a showing of a little procedural unconscionability, Plaintiff must demonstrate a substantial amount of substantive unconscionability. Marin Storge & Trucking, Inc. v. Benco Contracting and Eng'g, 89 Cal. App. 4th 1042, 1056 (2001) ("[i]n light of the low level of procedural unfairness . . . a greater degree of substantive unfairness than has been shown here was required before the contract could be found substantively unconscionable."); Woodside Homes of Cal., Inc. v. Superior Court, 107 Cal. App. 4th 723, 730 (2003) (because plaintiff home buyers were not unsophisticated or lacking in choice, they established only a "low level" of procedural unconscionability and were obligated to establish "a *high* level of substantive unconscionability.")

### 2. Substantive Unconscionability

Substantive unconscionability focuses on the actual terms of the agreement and evaluates whether they create an "overly harsh" or "one-sided" result. Armendariz, 24 Cal. 4th at 114; see also Little v. Auto Stiegler, Inc., 29 Cal. 4th 1064, 1071 (2003). The question is "whether contractual provisions reallocate risks in an objectively unreasonable or unexpected manner." Serpa, 215 Cal. App. 4th at 703. "A contract is not substantively unconscionable when it merely gives one side a greater benefit;

---

even more procedurally unconscionable, those rules were subject to unilateral amendment by defendant at any time." Id. The Court notes that the "Dispute Resolution Procedures" found in the "Quixtar IBO Rules of Conduct" were rules specific to the defendant and not easily accessible on the Internet.

rather, the term must be "so one-sided as to 'shock the conscience.'" Pinnacle, 55 Cal. 4th at 246.

"[T]he paramount consideration in assessing conscionability is mutuality." Abramson v. Juniper Networks, Inc., 115 Cal. App. 4th 638, 657 (2004). California law requires an arbitration agreement to have a "modicum of bilaterality," see Armendariz, 24 Cal.4th at 117, and arbitration provisions that are "unfairly one-sided" without justification, are substantively unconscionable, see Little, 29 Cal. 4th at 1071-72; Stirlen, 51 Cal. App. 4th at 1537-42 (employee was subject to inherent shortcomings of arbitration-limited discovery, limited judicial review, limited procedural protections and significant damage limitations while employer was not subject to these disadvantageous limitations and had written in the agreement special advantages); Kinney v. United HealthCare Servs., Inc., 70 Cal. App. 4th 1322, 1332 (1999) (arbitration to compel the employee but not the employer to submit claims to arbitration was unconscionable).

### a. Forum Selection Clause

Plaintiff argues that the forum selection clause[2] ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. In opposition, Defendant states it does business in all 50 state but also

---

[2] Plaintiff also contends that the choice of law provision makes the arbitration provision substantively unconscionable. However, the choice of law provision is contained in the AR agreement and not in the separate arbitration provision. Parties may agree to state law rules for arbitration, but the parties must clearly evidence their intent to be bound by such rules. Sovak v. Chugai Pharm. Co., 280 F.3d 1266, 1270 (9th Cir. 2002). Choice-of-law clauses will be interpreted as simply supplying state substantive law, and not rules for arbitration. Id. Here, the AR Agreement's choice-of-law clause provides that Virginia substantive law will apply when determining the merits of the dispute arising under the AR Agreement; it does not provide that Virginia arbitration rules will apply. See Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000) ("the best way to harmonize the choice-of-law provision with the arbitration provision is to read the former to encompass substantive principles that state courts would apply, but not to include special rules limiting the authority of arbitrators"). Therefore, Plaintiff's argument as to the choice of law provision is not applicable in challenging the arbitration provision.

1 asserts that it will consider negotiating a mutually agreeable venue.

2 ███████████████████████████████████████████████████████████████████████████

3 ████████████ (Dkt. No. 11-1, AR Agreement, Ex. E ¶ 3(a) (UNDER SEAL).) "[F]orum selection clauses are valid and should be given effect unless enforcement of the clause would be unreasonable." Intershop Commc'ns, AG v. Superior Court, 104 Cal. App. 4th 191, 196 (2002) (citing Smith, Valentino & Smith, Inc. v. Superior Court, 17 Cal.3d 491, 495–96 (1976)). However, if the "place and manner" restrictions of a forum selection provision are "unduly oppressive," see Bolter v. Superior Court, 87 Cal. App. 4th 900, 909–10 (2001), or have the effect of shielding the stronger party from liability, see Comb v. PayPal, Inc., 218 F. Supp. 2d 1165, 1177 (N.D. Cal. 2002), then the forum selection provision is unconscionable.

"California favors contractual forum selection clauses so long as they are entered into freely and voluntarily, and their enforcement would not be unreasonable." Am. Online, Inc. v. Superior Court, 90 Cal. App. 4th 1, 11 (2001). "Our law favors forum selection agreements as long as they are procured freely and voluntarily, with the place chosen having some logical nexus to one of the parties or the dispute, and so long as California consumers will not find their substantial legal rights significantly impaired by their enforcement. Therefore, to be enforceable, the selected jurisdiction must be 'suitable,' 'available,' and able to 'accomplish substantial justice.' " Id. at 12. The court also noted that "[f]orum selection clauses are important in facilitating national and international commerce, and as a general rule should be welcomed" and will become more ubiquitous as electronic commerce increases. Id. at 12 (quoting Wimsatt v. Beverly Hills Weight Loss Clinics Int'l, Inc., 32 Cal. App. 4th 1511, 1523 (1995)).

Plaintiff argues that its business is in California, and that the AR Agreement was executed in California (through e-signatures) and the harms afflicted upon Plaintiff by Defendant occurred in California and Defendant is a Delaware Corporation with its headquarters in Overland Park, Kansas. ████████████████████████████████████
████████████████████████████████ Moreover, Plaintiff would have to travel at great personal

1  financial expense across country. Moreover, the fact that neither party can transfer
2  venue or forum is overly harsh. Defendant states that Sprint products are sold
3  throughout the United States and Sprint does business in all 50 states. (Dkt. No. 9-1,
4  Drugatz Decl. ¶ 2.) However, as to the forum selection clause, Sprint states it will
5  consider negotiating a mutually agreeable venue with Haisha. (Dkt. No. 9 at 6.) Since
6  Sprint is amenable to changing the forum selection clause to a mutually agreeable
7  venue, the Court severs the forum selection clause.

8       A court has discretion to either sever an unconscionable provision from an
9  agreement or refuse to enforce the agreement in its entirety. Pokorny, 601 F.3d at
10 1005 (citing Ingle v. Circuit City Stores, Inc., 328 F.3d 1165, 1180 (9th Cir. 2003));
11 Bolter v. Superior Court, 87 Cal. App. 4th 900, 911 (2001) (finding "place and manner"
12 in which the arbitration was to occur was unconscionable and were clearly severable
13 from the remainder of the arbitration agreement); Armendariz, 24 Cal. 4th at 124.
14 California law allows the court to sever any unconscionable provisions so long as they
15 are "merely collateral to the main purpose of the arbitration agreement." See
16 Grabowski v. Robinson, 817 F. Supp. 2d 1159, 1179 (S.D. Cal. 2011) (citing
17 Armendariz, 24 Cal. 4th at 124); see also Pokorny, 601 F.3d at 1005. "In exercising
18 this discretion, courts look to whether the 'central purpose of the contract is tainted
19 with illegality' or 'the illegality is collateral to [its] main purpose.'" Ingle, 328 F.3d
20 at 1180.

21      The Court concludes that the forum selection clause is "merely collateral" to the
22 main purpose of the agreement and that it can easily be severed from the Agreement.
23 See Grabowski, 817 F. Supp. 2d at 1179. Therefore, because Defendant is amenable
24 to changing the forum selection clause to a mutually agreeable location, the Court
25 severs the forum selection clause.

26      **b.    Lack of Mutuality**
27      Plaintiff summarily argues there is lack of mutuality ███████████████
28 ████████████████████████████████████████████████

1 ███████████████████████████████████████████████████████████████
2 ████████████████████████████████████
3 █████████████████████████████████████████████████████
4 █████████████████████████████████████████████████████
5 ████████████████████████████████████████████████████.

6 (Dkt. No. 11-1, Ex. A at 45 (UNDER SEAL).)

7       The California Supreme Court held that lack of mutuality in a contract of
8 adhesion does not necessarily render the contract invalid. <u>Armendariz</u>, 24 Cal. 4th at
9 117. In <u>Stirlen</u>, the court recognized that a contract can provide the party with superior
10 bargaining strength with a "margin of safety" for which it has a legitimate commercial
11 need without being unconscionable. <u>Stirlen v. Supercuts, Inc.</u>, 51 Cal. App. 4th 1529,
12 1536 (1997). "However, unless the 'business realities' that create the special need for
13 such an advantage are explained in the contract itself . . . it must be factually
14 established." <u>Id.</u>

15       Here, the parties do not provide facts supporting the "business realities."
16 However, in <u>Moody</u>, the district court concluded that a similar injunctive relief
17 provision, as in this case, was not substantively unconscionable because there was a
18 legitimate commercial reason despite the fact that the section did not provide the same
19 rights to both parties. <u>Moody v. Metal Supermarket Franchising America, Inc.</u>, No. C
20 13-5098 PJH, 2014 WL 988811, at *5 (N.D. Cal. Mar. 10, 2014). In <u>Moody</u>, the court
21 noted that the provision allowing the defendant to seek injunctive relief from a court
22 of competent jurisdiction, and not the Plaintiff is limited to instances where there is no
23 adequate remedy at law or which may cause defendant irreparable harm. <u>Id.</u> The
24 provision stated that irreparable harm may be presumed if there is a violation of certain
25 sections concerning the use of defendant's trademarks and confidential information and
26 a non-competition covenant in case plaintiff were to transfer his franchise to someone
27 else. <u>Id.</u> The court explained that the defendant "has a commercial need that is not
28 shared by plaintiff" since the defendant is making its trademarks and confidential

1  information available to the other and it is the defendant who faces the possibility that
2  plaintiff will transfer his franchise agreement and start his own independent business.
3  Id.
4      Similarly, in this case, the
5  provision ███████████████████████████████████████████████████████
6  ███████████████████████████████████████████████████████████████████.
7  ███████████████████████████████████████████████████████████████████
8  ████████████████. (Dkt. No. 11-1, AR Agreement ¶ 8.9 (UNDER SEAL).) ████████
9  ████████████████████████████████████████████████████████. (Id. ¶ 10
10 (UNDER SEAL).)  Here, Defendant has a legitimate commercial interest and need for
11 seeking injunctive relief that Plaintiff does not.  See Moody, 2014 WL 988811 at 5; but
12 see Martinez v. Master Protection Corp., 118 Cal. App. 4th 107, 115 (2004)
13 (employment agreement exempting from arbitration claims most likely brought by
14 employers such as "injunctive and/or other equitable relief for unfair competition
15 and/or the use and/or unauthorized disclosure of trade secrets or confidential
16 information" which are claims typically asserted by employers but requires employees
17 to arbitrate claims they are most likely to assert); Mercuro v. Superior Court, 96 Cal.
18 App. 4th 167, 176 (2002) (employment arbitration agreement unfairly one sided as the
19 agreement compels arbitration of the claims employee are most likely to bring against
20 employer but agreement excluded claims most likely to be brought against employee
21 such as "injunctive relief and/or other equitable relief for intellectual property
22 violations, unfair competition and/or the use and/or unauthorized disclosure of trade
23 secrets or confidential information").  Accordingly, the Court concludes that Plaintiff
24 has not demonstrated lack of mutuality.
25      Based on the little procedural unconscionability and no substantive
26 unconscionability shown by Plaintiff, especially in light of the fact that the forum
27 selection clause will be severed from the Agreement, the Court concludes that the
28 arbitration provision is not unconscionable and the arbitration provision is

enforceable.[3]  Accordingly, the Court GRANTS Defendant's motion to compel arbitration and DISMISSES[4] the complaint.

### Conclusion

Based on the above, the Court GRANTS Defendant's motion to compel arbitration and DISMISSES the complaint. The Court also severs the forum selection clause in the AR Agreement and the parties are directed find a mutually agreeable location for arbitration. The Clerk of Court shall close the case. The hearing date set for January 16, 2015 shall be **vacated**.

IT IS SO ORDERED.

DATED: January 14, 2015

HON. GONZALO P. CURIEL
United States District Judge

---

[3] Since the Court finds that the arbitration provision is enforceable, and grants Defendant's motion to compel arbitration, the Court need not address Defendant's alternative argument that the complaint should be dismissed for failure to state a claim.

[4] Defendant also argued, alternatively, that the Court grant the motion to compel arbitration and stay the case. Plaintiff opposes a stay because the case should not even go to arbitration. Plaintiff presents no argument for a stay if the Court granted Plaintiff's motion to compel arbitration. Accordingly, the Court declines to address Defendant's alternative argument.